STEPHEN K. LEWIS, ESQ.
Nevada Bar No. 7064
6970 O'Bannon Dr.
Las Vegas, Nevada 89117
E-mail: slewis@trpnppo.com
Attorney for Plaintiff, Three Rivers Provider Network, Inc.

## UNITED STATES DISTRICT COURT
### ***
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| | ) | Case No. |
| | ) | |
| THREE RIVERS PROVIDER | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| MEDICAL COST CONTAINMENT | ) | |
| PROFESSIONALS LLC, DANIEL AYALA | ) | |
| JARRED PIERCE, FRANK WHELAN, | ) | |
| And DOE INDIVIDUALS 1-10, and ROE | ) | |
| CORPORATIONS 1-10, | ) | |
| Inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, Plaintiff, THREE RIVERS PROVIDER NETWORK, INC., by and through its attorney, STEPHEN K. LEWIS, and hereby alleges against Defendants as follows:

### PARTIES, JURISDICTION & VENUE

1.     That at all times mentioned herein, Plaintiff, Three Rivers Provider Network, Inc. ("TRPN"), was a Nevada corporation, operating and with its agent at 2360 Corporate Circle, Suite 400, Henderson, Nevada 89074, and its current principal place of business at 6970 O'Bannon Dr., Las Vegas, Nevada 89117.

2.    That upon information and belief, Defendant Medical Cost Containment Professionals, LCC, ("Med Cost Pros") is a Limited Liability Company formed under the laws of the State of California and is operating at 1133 Pacific Grove Loop, Chula Vista, CA 91915.

3.    That upon information and belief, Defendant DANIEL AYALA ("Ayala") is a California resident with an unknown address.  His last known address was 1133 Pacific Grove Loop, Chula Vista, CA 91915.   Ayala executed an agreement wherein he expressly acknowledged Clark County Nevada jurisdiction, venue and Nevada law.

4.    That upon information and belief, Defendant JARRED PIERCE ('Pierce") is a California resident with an unknown address. His last known address was 5777 Pray Street, Bonita, CA 91902.

5.    That upon information and belief, Defendant FRANK WHELAN ('Whelan") is a California resident with an unknown address. His last known address was 3830 Valley Center Drive Suite 705-606 San Diego, CA 92130-3320.  Defendants Ayala, Pierce and Whelan shall collectively be referred to as the "Individual Defendants".

6.    That upon information and belief, DOE INDIVIDUALS 1-10, whose identities are currently unknown to Plaintiff, each are responsible in some manner for the damages herein alleged.  Said Individuals worked with, for or in conjunction with the Individual Defendants to negligently or intentionally cause damages to Plaintiff.  It is possible such DOESs, were or are, employees at TRPN who conspired with the Individual Defendants to provide them: TRPN IP, confidential information, money and/or other property which is rightfully the Plaintiff's and to cause the damages complained of herein.  Plaintiff requests leave of this Honorable Court to amend this Complaint to name Defendants specifically when their identities become known.

7.    That upon information and belief, ROE CORPORATIONS 1-10, whose identities are currently unknown to Plaintiff, each are responsible in some manner for the damages herein alleged.    Said Corporations worked with, for or in conjunction with the Defendants to negligently or intentionally cause damages to Plaintiff.    Said Corporations may wrongfully possess property of the Plaintiff and should be estopped of further possession thereof.    Said Corporations may also possess assets, income or otherwise which is rightfully the property of Plaintiff and should be enjoined thereof. Plaintiff requests leave of this Honorable Court to amend this Complaint to name Defendants specifically when their identities become known.

8.    Venue is proper in this judicial district.    Plaintiff is a Nevada corporation with its principle place of business in Clark County, Nevada.    Individual Defendants were employed by the Plaintiff knowing it was a Nevada corporation. Defendants Ayala and Pierce both executed severance agreements wherein they acknowledged venue in Clark County, Nevada.    Defendant Med Cost Pros is a California corporation formed by Individual Defendants. Venue is proper in the District of Nevada, as Plaintiff is a Nevada corporation.

9.    The court has jurisdiction over this matter pursuant to 28 U.S.C. 1332. The amount in controversy exceeds $75,000 and the parties are diverse in residency.

## GENERAL ALLEGATIONS

10.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

11.    At some point, each while employed by TRPN, Defendants Pierce, Ayala and Whelan devised a scheme to open, operate and/or support a competing company to TRPN.

12.    Upon information and belief, the Individual Defendants conspired to utilize TRPN IP and confidential information, amongst other things, to the detriment of TRPN in

forming and/or operating Defendant Med Cost Pros; and perhaps within other related ROE Corporations.

13. Upon information and belief, the Individual Defendants conspired to gain, amongst other things, wrongful severance payments from TRPN.

Defendant Ayala

14. On or about April 24, 2016, Defendant Ayala executed an Employee Confidentiality and Non-disclosure Agreement with TRPN.   Among many things, that multi-page document binds Defendant Ayala to not utilize or disclose confidential Company information without the express written consent of TRPN.  Further, he was to keep all such information in the strictest confidence and trust.

15. Thereafter, on or about August 3, 2016, and in further support of Ayala's legal requirement to keep TRPN's confidential information in the strictest confidence, he executed a Waiver and Release Agreement with TRPN where, in exchange for a severance payment, and other consideration, Ayala again agreed to keep all TRPN information in confidence.

16. Upon information and belief, during his employment with TRPN, Ayala operated a competing medical billing company.  Ayala's ownership and employment with this competing company was not disclosed, approved or known to TRPN.  It is unknown if Ayala held other ownership or employment positions during his intended exclusive employment with TRPN.

17. Upon information and belief Ayala conspired with and/or otherwise worked with all the Defendants, and DOE Individuals and ROE Corporate Defendants to effectuate the damages complained of herein.

/ / /

/ / /

Defendant Pierce

18.     On or about April 8, 2016, and in further support of Pierce's legal requirement to keep TRPN's confidential information in the strictest confidence, he executed a Waiver and Release Agreement with TRPN where in exchange for a severance payment, and other consideration, Pierce again agreed to keep all TRPN information in confidence.

19.     Upon information and belief Pierce conspired with and/or otherwise worked with all Defendants and DOE Individuals and ROE Corporate Defendants to effectuate the damages complained of herein.

Defendant Whelan

20.     Defendant Whelan, at all times mentioned herein, was the CFO for TRPN.  Whelan negotiated the Waiver and Release Agreements with both Defendants Ayala and Pierce such that they would receive substantial severance payments.

21.     After arranging for the Individual Defendants to receive substantial severance agreements with TRPN, Defendant Whelan thereafter, and in the same calendar year, left TRPN's employ and himself, negotiated a substantial severance agreement.

22.     Soon after Defendants Ayala and Pierce left TRPN, Defendant Whelan left TRPN to join them as the CFO of Defendant MEDICAL COST CONTAINMENT PROFESSIONAS LLC.

23.     Upon information and belief, Defendant Whelan conspired with Defendants Ayala and Pierce in the creation and support of Defendant MEDICAL COST CONTAINMENT PROFESSIONAS LLC and ROE Corporations, through the utilization of Plaintiff's confidential information.

24.     Upon information and belief, Defendant Whelan conspired with Defendants Ayala and Pierce to cause Plaintiff to make severance payments to them in order to obtain his

CFO position in Defendant MEDICAL COST CONTAINMENT PROFESSIONAS LLC.

Plaintiff TRPN

25. The success of TRPN's business model depends upon many things, including: contracts with its clients, client lists, and its related intellectual property designed, developed and owned by TRPN which is utilized to service its clients ("IP"). Its IP keeps TRPN competitive on a national scale.

26. TRPN is also constantly innovating to better service the healthcare industry on many levels. All information related to these innovations are also its sole IP.

27. Defendants Ayala, Pierce and Whelan worked directly with TRPN at a high level. Daniel Ayala held employment as TRPN's National Account Manager. Jarred Pierce was employed as the Vice President of Managed Care. Defendant Whelan as TRPN's CFO. The DOE Defendants may have held other positions within TRPN. The Individual Defendants, were provided confidential IP in order to complete their job duties. While having access to TRPN IP, the Individual Defendants actively plotted, created and/or supported a competitor business with the goal of ruining TRPN.

28. Unbeknownst to TRPN, and undiscovered until February of 2017, the Individual Defendants had actually been conspiring to steal confidential information and clients to establish a competitor business where Ayala would serve as CEO. Furthermore, that the Individual Defendants may have been supporting other competitor businesses named herein as ROE Corporations.

29. Beginning sometime in late 2015, while still employed at TRPN, Defendants Ayala and Pierce violated their duties to TRPN and began to plot and/or support a competitor

business that would use TRPN's business model and confidential information obtained from TRPN's contracts, to steal business away from TRPN, with the goal of replacing TRPN in the marketplace.

30. In May of 2015, and perhaps before, while still employed with TRPN, Defendant Pierce began to steal proprietary information.

31. In June of 2016, and perhaps before, while still employed with TRPN, Defendant Ayala used his TRPN company email account to discuss budgeting money for his soon to be founded competitor business.

32. In July of 2017, while still employed with TRPN, Defendant Ayala officially filed to register Med Cost Pros as an LLC.

33. On April 8, 2016, Defendant Pierce signed a termination agreement with TRPN. In exchange for fifty thousand dollars in severance pay, Pierce promised to maintain the strict confidentiality of all TRPN's proprietary information that he obtained while employed with TRPN.

34. On August 3, 2016, Defendant Ayala signed a termination agreement with TRPN. In exchange for roughly thirty thousand dollars in severance pay, Ayala promised to maintain the strict confidentiality of all TRPN's proprietary information that he obtained while employed with TRPN.

**FIRST CAUSE OF ACTION**
**(Declaratory Relief)**

35. Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

36.   That a current controversy exists between Plaintiff and Defendants as to the nature and extent of their contractual relationships, obligations, duties, ownership rights, and responsibilities toward one another.

37.   A declaration of rights, duties, responsibilities, and obligations between Plaintiff and Defendants regarding their relationship is a justiciable controversy of adverse legal interests, which is ripe for review and declaration by this Court.

38.   Plaintiff requests that this Honorable Court declare the nature and extent of the parties' relationships.

39.   Plaintiff deserves and warrants a return of all trade secrets accessed, and the economic value of the misappropriation thereof by the Defendants.

40.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## SECOND CAUSE OF ACTION
### (Injunction Against All Defendants)

41.   Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

42.   An injunction may be granted when it shall appear by the Complaint that the Plaintiff is entitled to the relief demanded, and such relief or any part thereof consists in retaining the commission or continuance of the act complained of, either for a limited period orf perpetually.

43.   That Defendants devised a scheme to obtain Plaintiff's IP and related information for the purpose of creating, supporting and growing a competing company.

44. Defendants successfully and wrongfully utilized Plaintiff's IP to create and operate a competing company. Such company would not be in existence or able to operate but for the wrongful possession of Plaintiff's IP.

45. As alleged and demonstrated above, Plaintiff has experienced and is likely to continue to experience irreparable injury as a result of Defendants' conduct and therefore injunctive relief is mandated.

46. Individual Defendants have violated and are likely to continue to violate the terms of the agreements set forth above and/or have failed to act in accordance with the reasonable expectations of the Plaintiff.

47. Individual Defendants have violated and are likely to continue to violate the legal rights of the Plaintiff set forth above in absence of judicial intervention.

48. A continuation of the foregoing acts presents an immediate damage of serious harm for which Plaintiff has an inadequate remedy at law.

49. Plaintiff, as alleged and demonstrated above, enjoys a reasonable probability of success on the merits and Plaintiff will suffer irreparable harm for which compensatory damages will be an inadequate remedy if Defendants continue to act in a manner consistent with their past behavior.

50. Pending adjudication on the merits of the this case, said efforts by Defendants are causing and will continue to cause irreparable injury to Plaintiff, for which Plaintiff prays for a temporary restraining order, preliminary injunction, and ultimately a permanent injunction, enjoining such conduct by Defendants.

51. That Plaintiff requests that Defendants and any person or entity subject to their control or in association with them, be ordered to account for the manner in which Plaintiff's

assets were expended, and identify the location of the assets which were wrongfully taken by Defendants.  In addition, Plaintiff requests that Defendants and any person or entity subject to their control or in association with them, be enjoined from utilizing, deposing of, conveying, liquidating, or otherwise transferring the assets until a hearing on Plaintiff's Motion for Preliminary Injunction is heard by this Court.

52.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

**THIRD CAUSE OF ACTION**
**(Breach of Contract Against Defendant Ayala)**

53.   Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

54.   Plaintiff and Defendant Ayala had a Contract.

55.   Plaintiff performed all of its obligations pursuant to its contractual obligations with Ayala.

56.   Defendant Ayala breached the termination agreement he signed on August 3, 2016, when he used confidential information obtained as a result of his employment with TRPN to establish, support and/or operate a competitor business with the goal of replacing TRPN in the marketplace.

57.   That as an assignee, successor and/or direct beneficiary of the Ayala breach, Defendant Med Cost Pros is jointly and severally liable for Defendant Ayala's breach.

58.   TRPN suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

59.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## FOURTH CAUSE OF ACTION
### (Breach of Contract Against Defendant Pierce)

60. Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

61. Plaintiff and Defendant Pierce had a Contract.

62. Plaintiff performed all of its obligations pursuant to its contractual obligations with Pierce.

63. Defendant Pierce breached the termination agreement he signed on April 8, 2016, when he used confidential information obtained as a result of his employment with TRPN to establish a competitor business with the goal of replacing TRPN in the marketplace.

64. That as an assignee, successor and/or direct beneficiary of the Pierce breach, Defendant Med Cost Pros is jointly and severally liable for Defendant Pierce's breach.

65. TRPN suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

66. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## FIFTH CAUSE OF ACTION
### (Breach of Contract Against Defendant Whelan)

67. Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

68. Plaintiff and Defendant Whelan had a Contract.

69. Plaintiff performed all of its obligations pursuant to its contractual obligations with Pierce.

70. Defendant Whelan breached the termination agreement he signed on September 2, 2016, when he used confidential information obtained as a result of his employment

with TRPN to establish a competitor business with the goal of replacing TRPN in the marketplace.

71.   That as an assignee, successor and/or direct beneficiary of the Whelan breach, Defendant Med Cost Pros is jointly and severally liable for Defendant Whelan's breach.

72.   TRPN suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

73.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

**SIXTH CAUSE OF ACTION**
**(Implied Covenant of Good Faith and Fair Dealing Against Defendant Ayala)**

74.   Plaintiff repeats and realleges each and every allegation set forth above and incorporates the same by reference as though fully set forth herein.

75.   Plaintiff and Ayala had a contract. In that contract, the law implies a covenant of good faith and fair dealing. The covenant required Ayala, among other things, to refrain from taking actions, which would deny Plaintiff the benefits of its contract.

76.   Plaintiff performed all the terms of the contract.

77.   That a special relationship existed between Plaintiff and Ayala.

78.   That Ayala, by his actions as set forth in the preceding paragraphs, has breached the covenant of good faith and fair dealing owed to Plaintiff. Upon information and belief, Ayala's purpose in engaging in the above- described activity was to frustrate Plaintiff's enjoyment of the benefits of the contract.

79.   Ayala's conduct qualifies as outrageous conduct. Ayala's committed such conduct intentionally, with malice, and with a conscious disregard for the rights of Plaintiff.

80.   Ayala's actions are grossly unfair to Plaintiff such that an award of punitive damages is necessary and appropriate.

81. The conduct was intentional and motivated by an evil mind, malice and a conscious disregard for the substantial likelihood of injury. Accordingly, punitive damages are appropriate.

82. That as a co-conspirator, assign, related entity, and/or Successor Corporation of Ayala, Defendants Pierce, Whelan, and/or Med Cost Pros, are liable for the debts and obligations of Ayala to Plaintiff under the terms of the Contract.

83. That as a result of Defendant's conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

84. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## SEVENTH CAUSE OF ACTION
### (Implied Covenant of Good Faith and Fair Dealing Against Defendant Pierce)

85. Plaintiff repeats and realleges each and every allegation set forth above and incorporates the same by reference as though fully set forth herein.

86. Plaintiff and Pierce had a contract. In that contract, the law implies a covenant of good faith and fair dealing. The covenant required Pierce, among other things, to refrain from taking actions, which would deny Plaintiff the benefits of its contract.

87. Plaintiff performed all the terms of the contract.

88. That a special relationship existed between Plaintiff and Pierce.

89. That Pierce, by his actions as set forth in the preceding paragraphs, has breached the covenant of good faith and fair dealing owed to Plaintiff. Upon information and belief, Pierce's purpose in engaging in the above-described activity was to frustrate Plaintiff's enjoyment of the benefits of the contract.

90. Pierce's conduct qualifies as outrageous conduct. Pierce committed such conduct intentionally, with malice, and with a conscious disregard for the rights of Plaintiff.

91. Pierce's actions are grossly unfair to Plaintiff such that an award of punitive damages is necessary and appropriate.

92. The conduct was intentional and motivated by an evil mind, malice and a conscious disregard for the substantial likelihood of injury. Accordingly, punitive damages are appropriate.

93. That as a co-conspirator, assign, related entity, and/or Successor Corporation of Pierce, Defendants Ayala, Whelan, and/or Med Cost Pros, are liable for the debts and obligations of Pierce to Plaintiff under the terms of the Contract.

94. That as a result of Defendant's conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

95. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## EIGHTH CAUSE OF ACTION
### (Implied Covenant of Good Faith and Fair Dealing Against Defendant Whelan)

96. Plaintiff repeats and realleges each and every allegation set forth above and incorporate the same by reference as though fully set forth herein.

97. Plaintiff and Whelan had a contract. In that contract, the law implies a covenant of good faith and fair dealing. The covenant required Whelan, among other things, to refrain from taking actions, which would deny Whelan the benefits of its contract.

98. Plaintiff performed all the terms of the contract.

99. That a special relationship existed between Plaintiff and Whelan.

100. That Whelan, by his actions as set forth in the preceding paragraphs, has breached the covenant of good faith and fair dealing owed to Plaintiff. Upon information and belief,

Whelan's purpose in engaging in the above-described activity was to frustrate Plaintiff's enjoyment of the benefits of the contract.

101. Whelan's conduct qualifies as outrageous conduct. Whelan committed such conduct intentionally, with malice, and with a conscious disregard for the rights of Plaintiff.

102. Whelan's actions are grossly unfair to Plaintiff such that an award of punitive damages is necessary and appropriate.

103. The conduct was intentional and motivated by an evil mind, malice and a conscious disregard for the substantial likelihood of injury. Accordingly, punitive damages are appropriate.

104. That as a co-conspirator, assign, related entity, and/or Successor Corporation of Whelan, Defendants Ayala, Pierce, and/or Med Cost Pros, are liable for the debts and obligations of Whelan to Plaintiff under the terms of the Contract.

105. That as a result of Defendant's conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

106. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

### NINTH CAUSE OF ACTION
### (Breach of Duty Of Loyalty Against Defendant Whelan)

107. Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

108. Defendant Whelan, as the CFO of Plaintiff was a fiduciary to Plaintiff.

109. Defendant Whelan owed Plaintiff the duty of loyalty, requiring him to maintain, in good faith, the Plaintiff's best interests over anyone else's interests.

110. Defendant Whelan breached his duty as set forth herein in his dealings with Pierce and Ayala.

111.    TRPN suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

112.    That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## TENTH CAUSE OF ACTION
### (Civil Conspiracy Against Defendants Ayala, Pierce And Whelan)

76.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates the same by reference as though fully set forth herein.

77.    Plaintiff is informed and believes, and on that basis alleges, that the Individual Defendants conspired together to form an illegal scheme to aid in the transfers and actions as alleged herein, to detriment Plaintiff. Plaintiff is further informed and believes, and on that basis alleges, that in pursuit of Defendants conspiracy and scheme, each of the Defendants engaged in the acts and conduct alleged hereinabove, and that all such acts and things were participated in and done by all of the Defendants, or by two or more of them together, pursuant to the conspiracy and for the purpose of causing the wrongful acts described herein to be carried out.

78.    That as a result of Defendants' conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

79.    That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## ELEVENTH CAUSE OF ACTION
### (Breach Fiduciary Duty Against Defendant Ayala)

80.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

81.     Defendant Ayala, as an employee of TRPN, owed a fiduciary duty to the Plaintiff to use his access to confidential and privileged information in a manner not adverse to the interests of the company and not for the purposes of self-enrichment at the expense of or to the detriment of the company.

82.     Defendant Ayala breached that fiduciary duty by engaging in self-dealing adverse to the company; providing, publishing and disseminating trade secrets of the company; and employing affirmative misrepresentations of fact to Plaintiff and its employees to accomplish this fraud upon the company, and all to amongst other things, fund a competitor of Plaintiff where he would serve as CEO.

83.     Plaintiff suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

84.     That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## TWELFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Defendant Pierce)

85.     Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

86.     Defendant Pierce, as an employee of TRPN, owed a fiduciary duty to the Plaintiff to use his access to confidential and privileged information in a manner not adverse to the interests of the company and not for the purposes of self-enrichment at the expense of or to the detriment of the company.

87.     Defendant Pierce breached that fiduciary duty by engaging in self-dealing adverse to the company; providing, publishing and disseminating trade secrets of the company; and employing affirmative misrepresentations of fact to Plaintiff and its employees to

accomplish this fraud upon the company, and all to fund a competitor of Plaintiff and/or himself.

88. Plaintiff suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

89. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## THIRTEENTH CAUSE OF ACTION
### (<u>Breach of Fiduciary Duty Against Defendant Whelan</u>)

90. Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

91. Defendant Whelan, as an executive employee of TRPN, owed a fiduciary duty to the Plaintiff to use his access to confidential and privileged information in a manner not adverse to the interests of the company and not for the purposes of self-enrichment at the expense of or to the detriment of the company.

92. Defendant Whelan breached that fiduciary duty by engaging in self-dealing adverse to the company; providing, publishing and disseminating trade secrets of the company; and employing affirmative misrepresentations of fact to Plaintiff and its employees to accomplish this fraud upon the company, and all to fund a competitor of Plaintiff and/or himself.

93. Plaintiff suffered real and calculable damages from this breach, including, but not limited to compensatory damages.

94. That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

/ / /

/ / /

## FOURTEENTH CAUSE OF ACTION
### (<u>Conversion Against All Defendants</u>)

95.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

96.    Defendant Med Cost Pros, and ROE Corporations were intentionally and wrongfully provided Plaintiff's confidential information and IP through the wrongful actions of the Individual Defendants.

97.    All Defendants received the property of the Plaintiff in contradiction to the Plaintiff's right of use and enjoyment of its property.

98.    Defendants' wrongful use of the Plaintiff's IP and related information is inconsistent to the Plaintiff's rights in the property.

99.    That as a result of Defendants conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

100.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## FIFTEENTH CAUSE OF ACTION
### (<u>Usurpation of Corporate Opportunity Against All Defendants</u>)

101.   Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

102.   The Individual Defendants were fiduciaries to Plaintiff.

103.   During their employment with Plaintiff, the Individual Defendants appropriated business opportunities, rightfully of the Plaintiff for their own use and to Defendant Med Cost Pros and/or ROE Corporations.

104.   Defendant Med Cost Pros and/or ROE Corporations are competing businesses to Plaintiff which were and are at all times mentioned herein, operating to the detriment of Plaintiff.

105.  The Individual Defendants have interest in Defendant Med Cost Pros and/or ROE Corporations.

106.  That as a result of Defendants conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

107.  That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

**SIXTEENTH CAUSE OF ACTION**
**(<u>Violation of The Uniform Trade Secrets Act Against All Defendants</u>)**

108.  Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

109.  Plaintiff possessed viable and confidential information and IP as part of their job duties which is extremely confidential and derives value from not being generally known to the public or its competitors.

110.  Plaintiff took adequate measures to guard the secrecy of its confidential information and IP.

111.  Defendants intentionally and with intent to injure Plaintiff, obtained confidential information and IP it was not entitled.  Defendants accepted and received that information as a direct benefit.

112.  Defendants knew or should have known that Plaintiff's IP and related information was not such that it is to be given freely and without consideration and was in breach of both an express and implied contract of confidentiality.

113.  The Individual Defendants acted with willful, wanton or reckless disregard to the Plaintiff's rights in taking its IP.

114.  Defendants have wrongfully utilized Plaintiff's IP for their own business benefit, and have received direct and indirect benefits from that wrongful utilization.

115.    That as a result of Defendants conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

116.    Additionally, Plaintiff deserves and warrants a return of all trade secrets accessed, and the economic value of the misappropriation thereof by the Defendants.

117.    That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

**SEVENTEENTH CAUSE OF ACTION**
**(<u>Unjust Enrichment Against All Defendants</u>)**

118.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

119.    Plaintiff conferred a benefit to individual Defendants by entrusting them with confidential information and IP as part of their job duties with Plaintiff.

120.    Defendant Med Cost Pros and/or ROE Corporations were provided Plaintiff's confidential information and IP through the wrongful actions of the Individual Defendants.

121.    All Defendants accepted and received the benefit conferred by Plaintiff.

122.    Defendants obtained confidential information and IP they were not entitled to from the Individual Defendants.  Defendants accepted and received that information as a benefit.

123.    Defendants knew or should have known that Plaintiff's IP and related information was not such that it is to be given freely and without consideration.

124.    Plaintiff acted with legitimate expectation of security and privacy in their confidential information and IP when it was made available to the Individual Defendants.

125.    Defendants have wrongfully utilized Plaintiff's IP for their own business benefit, and have received direct and indirect benefits from that wrongful utilization.

126.    To permit Defendants to retain the benefits of Plaintiff's IP and related information, without compensation would result in unjust enrichment of Defendants at the Plaintiff's expense and unjustifiable detriment.

127.    That by virtue of Defendants actions and inactions, as set forth herein, Defendants have been unjustly enriched to the detriment of the Plaintiff.

128.    That as a result of Defendants conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

129.    Additionally, Plaintiff deserves and warrants a return of all trade secrets accessed, and the economic value of the misappropriation thereof by the Defendants.

130.    That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

**EIGHTEENTH CAUSE OF ACTION**
**(<u>Constructive Trust Against All Defendants</u>)**

131.    Plaintiff repeats and realleges each and every allegation set forth above and incorporates them herein by reference as though fully set forth.

132.    Plaintiff and the Defendants held a confidential relationship.

133.    Defendants have wrongfully utilized Plaintiff's IP for their own business benefit, and have received direct and indirect benefits from that wrongful, unjust, unconscionable and unlawful utilization.

134.    That without Plaintiff's IP and confidential information, Defendants would be unable to operate Med Cost Pros and/or ROE Corporations.

135.    To permit Defendants to retain the benefits of Plaintiff's IP and related information, without compensation would result in inequitable results.

136.   That by virtue of Defendants actions, as set forth herein, and to effectuate justice, Defendants should be found to hold all profits and all of Plaintiff's IP and confidential information since beginning of its operations in trust for Plaintiff.

137.   That as a result of Defendants conduct, Plaintiff has been damaged in a sum to be more precisely proven at trial.

138.   That it has been necessary for Plaintiff to obtain the services of counsel to prosecute this action, and Plaintiff is entitled to those fees and costs reasonably incurred.

## REMEDIES SOUGHT

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general damages;

2. For special damages;

3. For punitive damage in an amount necessary to punish the Defendants and protect the public from such actions in the future;

4. For declaratory relief as requested herein;

5. For a constructive trust;

6. For disgorgement of profits;

7. For lost profits;

8. For an injunction as requested herein;

9. For costs of suit;

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23

10. For reasonable attorney's fees incurred herein; and

11. For such other and further relief as the Court may deem just and proper.

Dated this  24th  day of January 2018.

By: ss//  Stephen Lewis
       STEPHEN K. LEWIS, ESQ.
       Nevada Bar No. 7064
       6970 O'Bannon Dr.
       Las Vegas, Nevada 89117
       E-mail: slewis@trpnppo.com
       Attorney for Plaintiff, Three Rivers
       Provider Network, Inc.